UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| SAMARA LEE<br>7650 Westwood Drive<br>Apt. 501<br>Tamarac, FL 33321<br><br>    Plaintiff,<br><br>CITY OF POMPANO BEACH<br>ATTN: Mark Berman, Esq.<br>City Attorney<br>100 W Atlantic Blvd.<br>Room 467<br>Pompano Beach, FL 33060<br><br>    and<br><br>ATTN: Greg Harrison<br>City Manager<br>100 W Atlantic Blvd.<br>4th Floor<br>Pompano Beach, FL 33060<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>Judge:<br><br><br><br>**COMPLAINT**<br>**JURY DEMAND ENDORSED HEREON** |

**NOW COMES** the Plaintiff, Samara Lee, by and through her undersigned counsel, and for her Complaint states as follows:

## NATURE OF THE ACTION

1. This is an action instituted under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, *et seq.*, and 42 U.S.C. Section 1981, to vindicate federally protected rights against unlawful employment practices on the basis of race.

## THE PARTIES

2. Plaintiff Samara Lee is an African American female.

3. Plaintiff is a United States citizens and at all relevant times hereto has resided within Tamarac, Florida.

4. Plaintiff was employed by the City of Pompano Beach, within the Fire Department.

5. Defendant City of Pompano Beach (hereinafter the "City" or "Defendant") operates as a municipality, organized and existing under the laws of the State of Florida.

6. The City is an entity and has been doing business within the County of Broward, State of Florida, at all times material herein.

7. The City at all relevant times herein was the employer of Plaintiff.

## JURISDICTION AND VENUE

8. Plaintiff repeats and reiterates each and every allegation set forth in hereinabove as if fully rewritten herein.

9. This action arises under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e-2 (Title VII), 42 U.S.C. §§s1981 (Equal Rights under the Law), and 1988 (Civil Rights Attorney Fee Award Act of 1976).

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 (Federal Question Jurisdiction) and 28 U.S.C. §1343(a) (Civil Rights Jurisdiction).

11. On or about April 27, 2021, Plaintiff timely filed a Charge of race-based discrimination with the United State Equal Employment Opportunity Commission ("EEOC").

12. Plaintiff subsequently requested a Right to Sue letter from the EEOC

13. The EEOC issued to Plaintiff a Notice of Right to Sue, dated August 25, 2021, (it should be noted that the Right to Sue Letter was not received by Plaintiff until August 25, 2021, as it was originally sent to the wrong email address).

14. A true and accurate copy of the August 25, 2021 EEOC Notice of Right to Sue is attached hereto and made a part hereof as Exhibit A.

15. The Court has original jurisdiction over Title VII claims filed within 90 days of Plaintiff's receipt of the EEOC's right to sue letter and, thus, this Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. §2000e-5(f)(3).

16. Venue for this action properly lies in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, pursuant to 29 U.S.C. §1391(b) because the Defendant is located within the State of Florida and this judicial district (29 U.S.C. §1391(b)(1)), the claims at issue arose in this judicial district (29 U.S.C. §1391(b)(2)) and pursuant to 42 U.S.C. 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## FACTS

17. Plaintiff repeats and reiterates each and every allegation set forth in hereinabove as if fully rewritten herein.

18. On or about October 8, 2020, the City hired Plaintiff as a Firefighter Paramedic in its Fire Department.

19. Plaintiff was the first and only African-America female recruit in over 20 years who worked in the City's Fire Department.

20. Plaintiff was treated differently than her Caucasian male peers who also worked in the City's Fire Department as Firefighter Paramedics.

21. Beginning no later than the second day of Plaintiff's tenure with the City, Training Commander Donald Desmond ("Training Commander Desmond") threatened to terminate Plaintiff if she were unable to complete successfully an air consumption drill within one day of training.

22. Training Commander Desmond did not, however, threaten other Caucasian male Firefighter Paramedics with termination if they were unable to complete the air consumption drills successfully.

23. Training Commander Desmond knew that Plaintiff was experiencing an illness at this time, though, suffering from two upper respiratory tract infections, making it difficult to breathe. Indeed, Plaintiff promptly notified Training Commander Desmond of her illness.

24. Training Commander Desmond knew that Plaintiff's illness affected her ability to complete the air consumption drill successfully.

25. Despite knowing of Plaintiff's illness, Training Commander Desmond made it clear to other high-level Fire Department personnel that he wanted to see Plaintiff fail, expressing that he was going to ensure that Plaintiff did not make it out of recruit training.

26. Training Commander Desmond did not express similar desires for other Caucasian male Firefighter Paramedics.

27. In or about November 2020, Plaintiff sprained her wrist and thumb on her dominant hand.

28. As a result of Plaintiff's injury, and as opined by a medical provider, Plaintiff was placed on light duty work.

29. Plaintiff reported her injury to Training Commander Desmond and Training Captain Alex De La Torre.

30. Plaintiff was not allowed light duty and was told instead by Captain Alex De La Torre "You knew what you signed up for, suck it up and take some skittles."  Skittles was a reference to pain killers because of their shape and color.

31. On or about November 17, 2020, Plaintiff suffered an injury to her right wrist and thumb during bail-out training.

32. On or about November 23, 2020, the City called Plaintiff into a mandatory meeting with Training Commander Desmond, Fire Chief Chad Brocato, Assistant Fire Chief Steve Hudson, and Training Captain Alex De La Torre.

33. During that meeting, all four Caucasian City employees berated Plaintiff for suffering injuries.  Indeed, the four Caucasian males questioned Plaintiff's injuries, were critical of the same, and expressed that Plaintiff's being injured was unfavorable to her continued employment with the City.

34. However, despite Plaintiff's being questioning and berated for suffering injuries on the job, two other Caucasian Firefighter Paramedic recruits, Eric Gutierrez and Jesselynn Rodriguez, were also injured.

35. Neither Eric Gutierrez nor Jesselynn Rodriguez was questioned, berated, or made to feel inadequate by the administration of the City's Fire Department.  Rather, dissimilar from Plaintiff's experience, both Caucasian Firefighter Paramedic recruits received immediate medical attention for their injuries and were not questioned about their medical injury status.

36. Moreover, the City accommodated both Caucasian recruits by permitting them to engage in further training.  The City did not, however, offer Plaintiff similar accommodation.

37. Rather, notwithstanding Plaintiff's injuries and illness, Plaintiff was not provided the same amount of time, training, and practice as other Caucasian Firefighter Paramedic recruits.

38. The City's recruitment training of the Firefighter Paramedics ended on or about December 16, 2020.

39. At the end of the recruitment training, all Firefighter Paramedics recruits, including Plaintiff, received their assignments.

40. Despite receiving her assignment, Fire Chief Brocato and Assistant Fire Chief Hudson advised Plaintiff that she was to remain in training for an additional two weeks.

41. At the same time, the City placed Plaintiff on light duty work. The City did not provide Plaintiff any reason for her placement on light duty work.

42. During the next two weeks, the City did not provide Plaintiff the additional training or practice.

43. Instead, two weeks later, on January 4, 2021, the City notified Plaintiff of its intent to terminate her.

44. On January 6, 2021, the City terminated Plaintiff.

45. The City has a history of choosing Caucasian employee recruits over female African-American employee recruits to work in the City's Fire Department, as demonstrated by the fact that Plaintiff was the first and only female African-American recruit in over 20 years who worked in the City's Fire Department but was subsequently terminated.

46. In addition to the City's holding Plaintiff to a different, i.e., higher standard of performance for training and qualification than other similarly situated Caucasian Firefighter Paramedic recruits, the City also treated Plaintiff less favorably than other similarly situated Caucasian Firefight Paramedic recruits by failing to provide or make-up the same training

opportunities upon suffering injuries as with the other similarly situated Caucasian Firefight Paramedic recruits.

47. Rather, as a result of Plaintiff's termination, the City treated Plaintiff differently and less favorable than other similarly situated Caucasian individuals by terminating Plaintiff.

48. As a direct and proximate result of Defendant's discriminatory actions against Plaintiff as aforesaid, Plaintiff has suffered a loss of employment opportunity, loss of income, loss of benefits, and incurred significant and ongoing attorney fees.

49. As a direct and proximate result of Defendant's discriminatory actions against Plaintiff as aforesaid, Plaintiff has suffered severe emotional, psychological and physical duress, mental anguish, embarrassment, humiliation and damages to reputation.

50. Plaintiff has timely exhausted all administrative remedies available to her in the pursuit of redress of the wrongs perpetrated upon her by Defendant as aforesaid.

51. As detailed above, Defendant targeted Plaintiff with racial bias and animus.

52. As detailed herein above, Defendant's acts of discrimination against Plaintiff were purposeful and undertaken with the discriminatory intent to deprive Plaintiff of his rights under federal and state law.

53. As a direct and proximate result of the Defendant's wrongful and discriminatory actions as aforesaid, Plaintiff has suffered discrimination, including, but not limited to, the loss of employment opportunities.

## COUNT ONE
## UNLAWFUL EMPLOYMENT PRACTICE
### (42 U.S.C. 2000e-2(a)(1), Title VII)

54. Plaintiff repeats and reiterates each and every allegation set forth in hereinabove as if fully rewritten herein.

55. Section 42 U.S.C. 2000e-2(a)(1) prohibits employers from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

56. At all times material herein, Defendant was Plaintiff's employer for purposes of Plaintiff maintaining an action against Defendant pursuant to 42 U.S.C. 2000e-2(a)(1).

57. Plaintiff was qualified for the position, as demonstrated by her initial recruitment and her receiving assignment.

58. Defendant discriminated against Plaintiff by terminating her because she is female and African American.

59. Plaintiff suffered an adverse employment action by being terminated by Defendant.

60. Plaintiff has been treated differently than similarly situated male Caucasian employees and recruits who were not terminated.

61. Defendants knew that that, by terminating Plaintiff under the circumstances, they were treating Plaintiff differently than other Caucasian employees and recruits.

62. As a direct and proximate result of Defendant's discrimination against Plaintiff as aforesaid, Plaintiff is entitled to judgment against the City for actual, compensatory and punitive damages, as well an award of attorney fees and costs reasonably incurred herein.

### COUNT TWO
### UNLAWFUL TERMINATION
### (42 U.S.C. §1981)

63. Plaintiff repeats and reiterates each and every allegation set forth in hereinabove as if fully rewritten herein.

64. At all times material herein, Plaintiff was qualified for the position of employment she held and the position for which he sought with Defendant.

65. Caucasian employees of the same employer as Plaintiff, having the same or similar qualifications as Plaintiff were not subjected to the racially charged hostile work environment and/or discriminatory employment practices as was Plaintiff.

66. Section 42 U.S.C. 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for race-based employment discrimination.

67. As detailed above, Plaintiff belongs to an identifiable class of persons who are and have been subject to discrimination based on their race.

68. As detailed above, Defendant knew of and refused to timely remediate the racially charged hostile work environment to which Plaintiff was subjected.

69. Defendant intended to and in fact did discriminate against Plaintiff on the basis of her status as an African American.

70. Defendant unlawfully discriminated against Plaintiff by denying her employment opportunities for which she was qualified.

71. As a direct and proximate result of the Defendant's wrongful and discriminatory actions as aforesaid, Plaintiff suffered a materially adverse change in the terms and/or conditions of her employment with the City.

72. As detailed above, Defendant's discriminatory conduct towards Plaintiff (1) abridged Plaintiff's right to contract with the City free from discrimination, and/or (2) to have and enjoy the full and equal benefit of all laws and proceedings for the security of her property as is enjoyed by white citizens.

73. As a direct and proximate result of Defendant's discriminatory conduct in violation of 42 U.S.C. §1981 towards Plaintiff, Plaintiff is entitled to an award of actual, compensatory

and punitive damages, as well an award of attorney fees and costs reasonably incurred herein.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for actual, compensatory and punitive damages, reasonable attorney fees and costs, including but not limited to expert fees, all in such amount as shall be shown at trial upon the merits hereof, and for such other and further relief as Court may deem just or equitable.

**Dated:** November 22, 2021

Respectfully Submitted,
The McFarlane Firm, P.A.

*/s/ Gregory A. McFarlane, Esquire*

By: Gregory A. McFarlane, Esq.
FBN: 615358
(954) 210-5571
(954) 210-5572 (fax)
greg@themcfarlanefirm.com
PO Box 190393
Ft. Lauderdale, FL 33319

### JURY DEMAND

Plaintiff demands trial by jury on all issues so triable herein.

The McFarlane Firm, P.A.

*/s/ Gregory A. McFarlane, Esquire*

By: Gregory A. McFarlane, Esq.
FBN: 615358
greg@themcfarlanefirm.com
PO Box 190393
Ft. Lauderdale, FL 33319